Case 2:19-at-99903   Document 490 (Court only)   Filed 03/27/19   Page 1 of 26

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

TRAVIS FOLEY, on behalf
of himself and on behalf of all others
similarly situated,

     Plaintiffs,

v.                       Case No.:

CRIMSHIELD, INC., a domestic
for-profit corporation,

     Defendant.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Travis Foley, by and through his attorneys, and on behalf of himself and the putative classes set forth below, and in the public interest, brings this Class Action Complaint. In this Complaint, Plaintiff sues Defendant, CrimShield, Inc. ("CrimShield" or "Defendant"), including its related entities, subsidiaries, predecessors and successors, under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq.

## PRELIMINARY STATEMENT

1.     Plaintiff is a consumer/applicant who was the subject of a consumer report that was issued and used for employment purposes by Defendant, CrimShield, Inc.

2.     CrimShield, Inc. is a consumer reporting agency ("CRA"), providing employers with consumer reports, commonly referred to as "background checks," for employment purposes. Employers rely on these reports to make employment related decisions on applicants and employees.

3.     Accessing employment-purpose background checks is presumptively illegal under the FCRA.  To access and use background checks, employers must abide by strict disclosure and notice requirements imposed by the Act, and must—before they may obtain a report in the first place—certify to the CRA that they have (as to disclosure) and will (regarding notice) abide by these requirements.  *See* 15 U.S.C. § 1681b(b)(2), (3).

4.     The FCRA also makes it presumptively illegal for a CRA like Defendant to issue a consumer report in the employment context.  A CRA may issue such a report "only if" it first obtains from the person to whom it plans to issue the report the certification described in the preceding paragraph.

5.     These requirements must be met as to each report a CRA issues—blanket or prospective certifications by the users of reports are not permitted.

6.     The failure to meet these certification rules means the CRA is forbidden from issuing consumer reports in the employment context.  If the CRA issues a consumer report without the necessary certifications, it violates the law with each report is so issues.

7.     The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a "consumer report" for an employment purpose.  Such use becomes lawful if and only if the CRA and user of the consumer report have complied with the statute's strict certification, disclosure, authorization and notice requirements. 15 U.S.C. § 1681b(a).

8.     CrimShield willfully violated these requirements, in systematic violation of Plaintiff's rights and the rights of other putative class members.

9.     CrimShield violated 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) by providing consumer reports used for employment purposes without certification from Jaguar Technologies, Inc., ("Jaguar") and other users to whom it provided consumer reports that such users would abide by

the FCRA's disclosure, authorization and notice requirements set forth in 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3).

10.     CrimShield did more than provide consumer reports to Jaguar and other comparable users. CrimShield conditioned the release of consumer reports upon the receipt of Crimshield's mandatory disclosure and authorization forms.

11.     Jaguar and other comparable users did not have discretion to use their own FCRA disclosure or authorization forms. To receive a consumer report from Crimshield, Jaguar and other users were required to use Crimshield's disclosure and authorization forms.

12.     In the procedure and system used by Jaguar and CrimShield, both entities participated in taking the alleged adverse action against Plaintiff. CrimShield initially used a consumer report for determining whether or not an applicant was eligible for employment based on pre-determined criteria. After CrimShield made its determination, Jaguar abided by CrimShield's determination and denied employment to applicants/consumers deemed ineligible.

13.     Therefore, CrimShield violated 15 U.S.C. § 1681b(b)(3) in participating in the taking of an adverse action against Plaintiff and the putative class members without first providing the pre-adverse action notice and report required by the statute.

14.     Crimshield also violated 15 U.S.C. § 1681k by furnishing consumer reports containing public information likely to have an adverse effect on a consumer's ability to obtain employment but failing to provide at the time notification to the consumer that such information was being reported and to whom it was being reported.

15.     Based on the foregoing violations, Plaintiff asserts FCRA claims against CrimShield on behalf of himself and classes consisting of consumers whose consumer reports were furnished by CrimShield without certification that the user would comply with the FCRA's

strict disclosure, authorization and notice requirements; consumers upon whom CrimShield took adverse employment action but to whom CrimShield failed to provide pre-adverse action notification; and consumers upon Crimshield reported public record information likely to have an adverse effect on such consumer's employment but to whom Crimshield failed to provide at-the-time notification the information was being reported and to whom it was being reported.

16.     In Count I, Plaintiff asserts a FCRA claim against CrimShield under 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) on behalf of a "Certification Class" initially defined as:

> **All employees and job applicants in the United States upon whom Crimshield provided a consumer report for employment purposes without the user's valid certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action.**

17.     In Count II, Plaintiff asserts a claim against CrimShield for violation of 15 U.S.C. § 1681b(b)(3) on behalf of a putative "Adverse Action Class" class initially defined as:

> **All employees and job applicants in the United States who were subjected to an adverse employment action based upon a consumer report used by CrimShield in its determination that the employee or applicant was not eligible to provide services to its customer or a third party within five (5) years of the filing of this lawsuit through the date of final judgment in this action.**

18.     In Count III, Plaintiff asserts a claim against CrimShield on behalf of a "FCRA § 1681k Class" initially defined as:

> **All employees and job applicants (a) who were the subject of a CrimShield consumer report issued with the five (5) years immediately preceding the filing of the Complaint in this matter, and used by CrimShield to adjudicate the consumer's employment eligibility on behalf of a third party (b) that was furnished for an employment purpose, (c) that contained at least one public record, (d) to whom CrimShield did not place in the United States mail postage pre-paid a written § 1681k(a)(1) notice on the day it adjudicated the report.**

19.     Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

20.     Plaintiff and putative class representative, Travis Foley ("Plaintiff"), lives in Florida, applied for employment with Jaguar, but was denied employment based upon his consumer report, which CrimShield provided to Jaguar.  Plaintiff is a member of all three putative classes defined below.

21.     Defendant, CrimShield is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and provides consumer reports for employment purposes.

## JURISDICTION AND VENUE

22.     This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331.

23.     Defendant, Crimshield is headquartered in Mesa, Arizona.

24.     Venue is proper in the United States District Court for the District of Arizona, Phoenix Division.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

25.     CrimShield describes itself as a "revolutionary platform for background screening and identify verification that combines cutting edge technology with licensed investigators."

26.     CrimShield provides consumer reports used for employment purposes.

27.     In some cases, CrimShield does more than just provide consumer reports. CrimsShield also adjudicates employment eligibility for its customers and other third parties.

28.     CrimShield adjudicates applicant/consumer employment eligibility using strict criteria established either by the user to whom it is providing the consumer report or by a third

party.

29.     Charter Communications is an example of a third party for whom Crimshield adjudicates employment eligibility.  When a consumer/applicant applies for employment with a Charter subcontractor, the subcontractor is contractually required to submit the consumer/applicant's personal and sensitive information to CrimShield.  CrimShield issues a consumer report and applies Charter Communications' criteria to adjudicate the consumer/applicant's eligibility for employment.

30.     CrimShield requires its customers to present the consumer/applicant with CrimShield's FCRA disclosure as a condition for CrimShield to generate a consumer report.

31.     CrimShield requires its customers to have consumers/applicants execute CrimShield's authorization forms as a condition for CrimShield to generate a consumer report.

32.     CrimShield's customers do not have discretion to use their own FCRA disclosure or obtain their own written authorization.  Customers must use CrimShield's forms to obtain a consumer report from CrimShield.

33.     Using the applicant/consumer's personal and sensitive information, CrimShield generates a consumer report.

34.     CrimShield reviews the consumer report.  CrimShield applies Charter's criteria to determine whether the consumer/ applicant can have access to Charter's customers.

35.     CrimShield's adjudication determines whether the consumer/applicant is eligible to provide services to Charter's customers.   Therefore, CrimShield is a "user" of consumer reports as that term is defined in the FCRA.

36.     A consumer/applicant deemed eligible by CrimShield can access Charters' customers and be hired by the subcontractor.  If CrimShield adjudicates an applicant/consumer to

be "ineligible" for access to Charter's customers, the applicant/consumer is routinely denied employment since they cannot perform services for Charter's customers.

37.     After CrimShield adjudicates the consumer/applicant's eligibility, it communicates the determination to its customer.

38.     Jaguar and comparable employers adopt CrimShield's eligibility adjudications, rarely challenging or attempting to alter the determination.  Jaguar and other comparable subcontractors do not hire applicants/consumers that CrimShield adjudicates ineligible.  In fact, Jaguar and other comparable employers regularly terminate employees originally deemed eligible but later adjudicated as ineligible.

39.     The adjudication by CrimShield, later adopted by Jaguar, is an adverse employment action for FCRA purposes.

40.     CrimShield knows Jaguar and other comparable customers adopt its eligibility determinations.  Thus, CrimShield knows it is using consumer reports for employment purposes.

## THE FAIR CREDIT REPORTING ACT

41.     Congress has recognized consumer reporting agencies like CrimShield have assumed a vital role in assembling information on consumers, and therefore implemented the FCRA to ensure credit reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681.

42.     In accordance with Congress' findings, a consumer reporting agency may only furnish a consumer report for employment purposes if the user has certified its compliance with 15 U.S.C. § 1681b(b)(2)(A) before the report is furnished and certifies future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.  15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

43.     The certification requirement reads, in pertinent part:

(1) **Certification from user:** A consumer reporting agency may furnish a consumer report for employment purposes **only** if –

**(A)** the person who obtains such report from the agency certifies to the agency that –

(i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable.

15 U.S.C. § 1681b(b)(1)(A)(i).

44.     A consumer reporting agency that furnishes consumer reports used for employment purposes without receiving the requisite certification of FCRA compliance from the user is furnishing the consumer report unlawfully.  15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

45.     The paragraphs referenced in § 1681b(b)(1)(A)(i) are the disclosure, written authorization and pre-adverse action notification requirements set forth in § 1681b(b)(2) and § 1681b(b)(3).

46.     CrimShield furnished consumer reports to Jaguar and other users with knowledge the reports were being used for employment purposes.  However, CrimShield furnished the consumer reports to Jaguar and other users, without requiring them to certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

47.     The FCRA has very strict disclosure and authorization requirements.  Pursuant to 15 U.S.C. § 1681b(b)(2)(A), it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

(i)     a ***clear and conspicuous*** disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes; and

        (ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A))(i)-(ii)

48.    The purpose of the certification requirement is to ensure users of consumer reports for employment purposes follow the statutory framework created by Congress to safeguard consumers' rights to privacy and information.

49.    It is flatly illegal for a consumer reporting agency to furnish a consumer report for employment purposes unless the consumer reporting agency has received the FCRA-mandated certification of FCRA compliance from the user.  In fact, compliance with the certification requirement provides the *only* lawful means for a consumer reporting agency to furnish a consumer report for employment purposes.  15 U.S.C. § 1681b(a).

50.    CrimShield requires users of its consumer reports certify to CrimShield that the user has provided the consumer/applicant with CrimShield's disclosure and authorization before CrimShield will generate a consumer report.

51.    Ironically, CrimShield's mandatory disclosure forms do not meet the requirements of 15 U.S.C. § 1681b(b)(2)(A) and are *per se* illegal.  Specifically, the CrimShield disclosure is not clear and conspicuous and is not on a document that consists solely of the disclosure.

52.    Moreover, CrimShield does not require the user to certify compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

## ALLEGATIONS SPECIFIC TO PLAINTIFF

53.    Plaintiff applied for employment with Jaguar in September, 2018.

54.    Jaguar is a subcontractor for Charter Communications.

55.     As part of the hiring process, Plaintiff was presented with CrimShield's FCRA disclosure, attached hereto as Exhibit "A."  On the basis of the FCRA disclosure and Plaintiff's written authorization thereon, Jaguar procured a consumer report for employment purposes from CrimShield.

56.     CrimShield was aware the only disclosure being made to applicants/consumers was the disclosure form CrimShield required Jaguar to use.

57.     CrimShield's disclosure does not comply with the FCRA because CrimShield's disclosure is not a clear and conspicuous disclosure on a stand-alone document.

58.     The CrimShield disclosures are distracting and pull the applicant/consumer's attention from the actual disclosure.

59.     The CrimShield forms are poorly formatted and refer to a fictitious "Federal Credit Reporting Act."

60.     The CrimShield disclosures are not clear.   The CrimShield disclosures are confusing and require applicants/consumers to agree to waive valuable federal rights regarding the dissemination of their personal, sensitive information.

61.     The CrimShield forms contain functional releases and waivers of rights.   By executing the CrimShield authorizations, consumers/applicants are forced to agree to forego any meaningful control over their personal and sensitive information.

62.     By executing the CrimShield authorizations, applicants/consumers give CrimShield unfettered discretion to release their personal information to third parties without additional notice.   Thus, consumers/applicants are deprived of the fundamental right to control the dissemination of their personal information.

63.     Had Plaintiff known that Jaguar and CrimShield would violate the law in obtaining and using his background check, he never would have signed the authorization documents.

64.     Had Plaintiff known that Jaguar and CrimShield were requiring him to agree to waive his federally protected rights, he never would have signed the authorization documents.

65.     CrimShield furnished Plaintiff's report to Jaguar even though Jaguar could not possibly certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before obtaining the report because the CrimShield forms do not comply with 15 U.S.C. § 1681b(b)(2)(A).

66.     Because CrimShield knew its disclosure forms violated the FCRA, it therefore knew or should have known that it did not have a permissible purpose to lawfully furnish its consumer reports to Jaguar and other comparable customers.

67.     Furthermore, CrimShield never required Jaguar to comply with § 1681b(b)(3), if ever applicable.

68.     Despite having none of the requisite certifications of FCRA compliance, CrimShield still furnished Jaguar and other users with thousands of consumer reports that were being used for employment purposes.

69.     Plaintiff was offered employment by Jaguar.

70.     Jaguar presented Plaintiff with the CrimShield disclosures.  While reading the disclosures, Plaintiff became distracted and confused about his legal rights.

71.     Plaintiff executed CrimShield's authorization form, thus agreeing to waive his federally protected rights and the right to control dissemination of his personal information.

72.     Jaguar obtained Plaintiff's consumer reports from CrimShield.

73.     CrimShield compiled Plaintiff's consumer report and used the report for employment purposes.

74.     CrimShield adjudicated Plaintiff as ineligible for employment.

75.     Jaguar adopted CrimShield's determination.

76.     Jaguar rescinded its job offer to Plaintiff based upon the consumer report CrimShield unlawfully furnished to Jaguar.  Thus, § 1681b(b)(3) was applicable.

77.     CrimShield did not provide Plaintiff with pre-adverse action notice, a copy of his consumer report or summary of rights as required by § 1681b(b)(3).

78.     CrimShield failed to provide Plaintiff with at-the-time notice that it reported adverse public record information that was likely to have an adverse effect on his ability to obtain employment, as required by the FCRA.  This failure injured Plaintiff because it deprived him of the ability to dispute inaccurate information in his reports or proactively discuss negative information with Jaguar before it decided not to hire him.

79.     CrimShield failed to provide Plaintiff with at-the-time notice that it reported adverse public record information that was likely to have an adverse effect on his ability to obtain employment, as required by the FCRA.  This failure injured Plaintiff because it deprived him of the ability to dispute inaccurate information in his report or proactively discuss negative information with CrimShield before being adjudicated ineligible.

80.     Jaguar did not provide Plaintiff with pre-adverse action notice, a copy of his consumer report or summary of rights as required by § 1681b(b)(3), most likely because Jaguar never certified to CrimShield it would comply with the statutory requirements, when applicable.

81.     CrimShield did not provide Plaintiff with pre-adverse action notice, a copy of his consumer report or summary of rights as required by § 1681b(b)(3).

82.     Plaintiff was denied employment, was not provided with the proper notice so that he learned of his rights to dispute any information in the report or to otherwise discuss the information in the report before being deemed ineligible and rejected for employment, and had his consumer reports improperly accessed because CrimShield failed to obtain the appropriate certifications from Jaguar.  Such failure also caused an invasion of Plaintiff's privacy, as CrimShield released his consumer reports to Jaguar without having a statutory basis for doing so.

## PLAINTIFF'S CONCRETE HARM

83.     CrimShield unjustly enriched itself by unlawfully compiling Plaintiff's personal, private and sensitive information and selling it to a third party without a permissible purpose. The injury of "unjust enrichment" has its roots in English common law.  Causes of action for unjust enrichment were part of "the traditional concern of the Courts at Westminster." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 US 765, 774 (2000) (quoting *Coleman v. Miller*, 307 U.S. 433, 460 (1939).

84.     CrimShield violated Plaintiff's right to privacy by compiling his personal, private and sensitive information into a consumer report and releasing it to a third party, Jaguar, without a permissible purpose.

85.     The FCRA's protections regarding who may obtain consumer reports and under what circumstances they may do so are real and substantive, not merely procedural.  The violation alleged here is not some mere technical requirement—without the certification of compliance from Jaguar, CrimShield had no statutory basis to release Plaintiff's consumer report to Jaguar.

86.     This improper issuance of a report harmed Plaintiff by invading his privacy—Defendant released Plaintiff's private, personal information to Jaguar without a lawful reason for doing so.

87.     Protection of consumer privacy is one well-recognized aspect of the FCRA, and the statutory provisions violated here have been part of the FCRA since its enactment in 1970.

88.     Plaintiff and the putative class members have a common-law right to keep their personal information from being distributed and used without their knowledge.  Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumer oriented safeguards, which restrict the distribution of consumer reports only for the reasons listed "and no other."  Indeed, the FCRA preempts the common-law tort of intrusion upon seclusion, and the FCRA expresses Congress' finding of "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy."  15 U.S.C. § 1681a(4).

89.     CrimShield invaded Plaintiff's right to privacy when it provided his highly personal and sensitive information without a statutory basis for doing so.

90.     CrimShield's failure to obtain the appropriate certification from Jaguar injured Plaintiff in that (1) Plaintiff's privacy was unlawfully invaded by CrimShield's provision of background report about him without statutory permission; (2) Plaintiff suffered an informational injury—by not obtaining a proper disclosure of Jaguar's intent to obtain his consumer report for employment purposes because the forms CrimShield required Jaguar to use did not satisfy the requirements of § 1681b(b)(2); (3) Plaintiff was deprived of his ability to contest or discuss with Jaguar the content of his consumer report because CrimShield did not obtain the proper certification from Jaguar that it would provide the appropriate notice to Plaintiff if it chose to use

the content of his consumer report as a basis to deny employment; and (4) CrimShield was unjustly enriched by selling Plaintiff's consumer report to Jaguar when it had no statutory basis on which to release the report to Jaguar.

91.     Plaintiff's injuries were a direct result of CrimShield's conduct.  Plaintiff's privacy was invaded because his personal information, which is protected from disclosure, was given to Jaguar and others without CrimShield employing the appropriate safeguards to protect that information.

92.     The conduct that CrimShield engaged in is precisely the type that Congress sought to prevent—protection of consumer privacy—with the restrictions it has imposed on access to consumers' sensitive, personal information.

93.     Plaintiff therefore suffered a concrete, in-fact injury that is directly traceable to CrimShield's conduct and that is likely to be redressed by a favorable decision here.

94.     CrimShield violated Plaintiff's right to privacy by compiling his personal, private and confidential information into a consumer report without a permissible purpose and selling it for a profit to a third party.

95.     CrimShield used public record information to compile Plaintiff's consumer report for employment purposes.  CrimShield was aware the information it gathered from public records would likely subject Plaintiff to an adverse employment action.  However, CrimShield never provided Plaintiff with at-the-time notice, thereby depriving Plaintiff of the opportunity to dispute or discuss his consumer report with CrimShield before being deemed ineligible.

96.     Jaguar rescinded Plaintiff's offer of employment based in whole or in part on the content of his consumer report, which CrimShield provided to Jaguar without a statutory basis for doing so.  However, Jaguar never provided Plaintiff with pre-adverse action notice, a copy of

his consumer report or summary of rights.  Again, it is not surprising Jaguar failed to satisfy the requirements of § 1681b(b)(3) since Jaguar never certified to CrimShield that it would comply with § 1681b(b)(3) before obtaining Plaintiff's consumer report.

97.     If Plaintiff had known CrimShield was furnishing his consumer report to Jaguar without a legal right to do so, Plaintiff would not have permitted CrimShield to furnish his consumer report to Jaguar.

98.     If Plaintiff had known CrimShield was furnishing his consumer report to Jaguar without a legal right to do so, and such consumer report would be the basis for rescinding the job offer, Plaintiff would not have permitted CrimShield to furnish his consumer report to Jaguar.

99.     If Plaintiff knew CrimShield was profiting unlawfully from his consumer report, Plaintiff would not have authorized CrimShield to compile his personal, private and sensitive information for sale.

## DEFENDANT ACTED WILLFULLY

100.     CrimShield knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

101.     CrimShield had legal resources available, including in-house counsel, which apprised it of its duties under the FCRA.

102.     Before CRAs provide consumer reports for employment purposes, they must obtain a written certification that the recipient has (a) provided the consumer with a FCRA-compliant disclosure that a report will be sought; and (b) received that consumer's written

authorization. *Obabuecki v. Int'l Business Machines Corp.*, 145 F. Supp. 2d 371, 393 (S.D.N.Y. 2001).

103.     This requirement has been part of the fabric of the FCRA since Congress enacted it.  CrimShield has had decades by which to become compliant with this requirement, yet it has not done so.

104.     CrimShield knowingly allowed Jaguar and comparable customers to execute an ineffective certification that they would comply with the disclosure and authorization requirements of the FCRA whenever it obtained consumer reports for employment purposes. Specifically, CrimShield knew the disclosure was defective and never required Jaguar to certify it would comply with 15 U.S.C. 1681b(b)(3), if applicable.

105.     CrimShield knew the disclosure was defective because CrimShield created it and required Jaguar and other comparable customers to use it.

106.     CrimShield also knows it acts in a dual capacity when it generates the consumer report for an employer and also adjudicates the applicant/consumer's eligibility for employment.

107.     CrimShield also knows it acts in a dual capacity when it generates the consumer report for an employer and determines the applicant/consumer is not eligible for employment with certain CrimShield customers.

108.     CrimShield attempted to circumvent compliance with the certification and pre-adverse action requirements of the FCRA by asserting its consumer reports were for "security purposes" rather than employment purposes.

109.     CrimShield attempted to circumvent compliance with the FCRA requiring consumers/applicants to waive federally protected rights to control the release of their personal, sensitive information.

110. CrimShield profited by requiring consumers/applicants to waive their federally protected rights to control the release of their personal, sensitive information.

111. CrimShield's conduct willfully disregards the plain language and legislative intent incorporated in the FCRA.

112. Despite knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving the consumers/applicants of their rights under the FCRA.

113. As a result of these FCRA violations, Defendant is liable to Plaintiff and to each putative class member for statutory damages from one hundred dollars ($100.00) to one thousand dollars ($1,000.00) pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS COMMON TO ALL COUNTS

114. <u>Numerosity:</u>  The members of the putative classes are so numerous that joinder of all class members is impracticable.  CrimShield furnished thousands of consumer reports to Jaguar alone.  CrimShield regularly compiles consumers' personal, private and sensitive information into consumer reports for sale to employers.  Plaintiff is informed and believes that during the relevant time period, tens of thousands of employees and prospective employees, if not hundreds of thousands, satisfy the definitions of the putative classes.  Based on the number of putative class members, joinder is impracticable.  The names and addresses of the class members are identifiable through CrimShield's records and published class members may be notified of this action by mailed notice.

115.   <u>Typicality</u>:  Plaintiff's claims are typical of those of the members of the putative classes.    CrimShield  typically  furnishes  consumer  reports  for  employment  purposes  to employers.   The FCRA violations suffered by Plaintiff are typical of those suffered by other putative class members.

116.   <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the putative class, and has retained counsel experienced in complex class action litigation.   Plaintiff is a member of all three (3) putative classes.

117.   <u>Commonality</u>:  Common questions of law and fact exist as to all members of the putative class, and predominate over any questions solely affecting individual members of the putative class.

118.   This case is maintainable as a class action because prosecution of actions by or against  individual  members  of  the  putative  classes  would  result  in  inconsistent  or  varying adjudications and create the risk of incompatible standards of conduct for CrimShield.   Further, adjudication of each individual class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

119.   This case is also maintainable as a class action because CrimShield acted or refused to act on grounds that apply generally to the putative classes.

120.   Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   CrimShield's conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA.   Members of the

putative classes do not have an interest in pursuing separate actions against CrimShield, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning CrimShield. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative classes member's claims in a single action, brought in a single forum.

## COUNT I
### Failure to Obtain Certification Prior to Furnishing a
### Consumer Report for Employment Purposes in Violation of 15 U.S.C. § 1681b(b)(1)(A)

121.    Plaintiff restates and readopts the allegations set forth in Paragraphs 1 through 120 as if fully set forth herein.

122.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of the "Certification Class" initially defined as:

> **All employees and job applicants in the United States upon whom Crimshield provided a consumer report for employment purposes without the user's valid certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action**.

123.    CrimShield willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it provided a consumer reports about Plaintiff, which was used for employment purposes, without the user's valid certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3).

124.    CrimShield invaded Plaintiff's privacy by compiling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and releasing said consumer report without a permissible purpose.

125.     CrimShield caused Plaintiff injury because the report CrimShield released was used, in whole or in part, as the basis for an adverse employment action.

126.     CrimShield caused Plaintiff injury because CrimShield permitted the user of his consumer report to circumvent the disclosure, authorization and notification requirements of the FCRA when using consumer reports for employment purposes by failing to require Jaguar to certify compliance therewith.

127.     The forgoing violations were willful.  At the time CrimShield violated 15 U.S.C. § 1681b(b)(1)(A), CrimShield knew it was required to obtain certification of compliance with 15 U.S.C. § 1681b(b)(2) from Jaguar before furnishing Jaguar with consumer reports for employment purposes and certification with the notification requirements of 15 U.S.C. § 1681b(b)(3), if applicable.  CrimShield's willful conduct is also reflected by, among other things, the following facts:

     a.  CrimShield knew of potential FCRA liability;

     b.  CrimShield is a consumer reporting agency with access to legal advice through their own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

     c.  The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

     d.  CrimShield knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

Case 2:19-at-99902   Document 490 (Court only)   Filed 03/27/19   Page 22 of 26

     e.   CrimShield voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

128.   Plaintiff and the "Certification Class" are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

129.   Plaintiff and the "Certification Class" are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative "Certification Class" pray for relief as follows:

     a.   determining that this action may proceed as a class action;

     b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

     c.   issuing proper notice to the putative class at CrimShield's expense;

     d.   finding that CrimShield committed multiple, separate violations of the FCRA;

     e.   finding that CrimShield acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

     f.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

     g.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT II
### Failure to Provide Pre-Adverse Action
### Notice in Violation of 15 U.S.C. § 1681b(b)(3)

130.   Plaintiff restates and readopts the allegations set forth in Paragraphs 1 through 120 as if fully set forth herein.

131.   Plaintiff asserts a claim against CrimShield for violation of 15 U.S.C. § 1681b(b)(3) on behalf of a putative "Adverse Action Class" class initially defined as:

> **All employees and job applicants in the United States who were subjected to an adverse employment action based upon a consumer report used by CrimShield in its determination that the employee or applicant was not eligible to provide services to its customer or a third party within five (5) years of the filing of this lawsuit through the date of final judgment in this action.**

132.   CrimShield willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), as to the Class, because it failed to provide a copy of the consumer report used to make an employment decision to Plaintiff and all other similarly situated applicants and employees at least five (5) days before taking an adverse action that was based in whole or in part on the consumer report.

133.   CrimShield also willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), as to the Class, because it failed to provide a copy of the FTC/CFPB FCRA Summary of Rights to Plaintiff and all other similarly situated applicants and employees at least five (5) days before taking an adverse action that was based in whole or in part on the consumer report.

134.   Plaintiff and the Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of its violations and punitive damages under 15 U.S.C. § 1681n.

135.   Plaintiff and the Class are entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

Case 2:19-cv-99902-3  Document 490 (Court only)   Filed 03/27/19   Page 24 of 26

WHEREFORE, Plaintiff, on behalf of himself and the putative "Adverse Action Class" pray for relief as follows:

     a.   determining that this action may proceed as a class action;

     b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

     c.   issuing proper notice to the putative class at CrimShield's expense;

     d.   finding that CrimShield committed multiple, separate violations of the FCRA;

     e.   finding that CrimShield acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

     f.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

     g.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT III
## Violation of 15 U.S.C. § 1681k

136.    Plaintiff restates and readopts the allegations set forth in Paragraphs 1 through 120 as if fully set forth herein.

137.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of a "FCRA § 1681k Class, defined as:

> **All employees and job applicants (a) who were the subject of a CrimShield consumer report issued with the five years immediately preceding the filing of the Complaint in this matter, and used by CrimShield to adjudicate the consumer's employment eligibility on behalf of a third party (b) that was furnished for an employment purpose, (c) that contained at least one public record, (d) to whom CrimShield did not place in the United States mail postage pre-paid a written § 1681k(a)(1) notice on the day it adjudicated the report.**

138.    CrimShield willfully violated the FCRA, 15 U.S.C. § 1681k(a), as to the Class, because it failed to and could not comply with § 1681k(a)(2), and yet still failed to provide the written § 1681k(a)(1) notice at the same time class member reports were provided to the procedures, systems and people at CrimShield that were acting in place of Jaguar to adjudicate the reports.

139.    CrimShield also willfully violated the FCRA, 15 U.S.C. § 1681k(a), because it failed to and could not comply with § 1681k(a)(2), and yet still failed to provide the written § 1681k(a)(1) notice at the same time class member reports were provided to Jaguar.

140.    Plaintiff and class members are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of its violations and punitive damages under 15 U.S.C. § 1681n.

141.    Plaintiff and class members are entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative "FCRA § 1681k Class," Plaintiff prays for relief as follows:

  a.  determining that this action may proceed as a class action;

  b.  designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

  c.  issuing proper notice to the putative class at CrimShield's expense;

  d.  finding that CrimShield committed multiple, separate violations of the FCRA;

  e.  finding that CrimShield acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

      f.   awarding statutory damages as provided by the FCRA, including punitive

          damages, to members of the putative class; and

      g.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the putative class demand a trial by jury.

Dated this 27th day of March, 2019.

                     **/s/ *Marc R. Edelman***
                     **MARC R. EDELMAN, ESQ.** *(Pro Hac Vice)*
                     Fla. Bar No. 0096342
                     **MORGAN & MORGAN, P.A.**
                     201 N. Franklin Street, Suite 700
                     Tampa, FL 33602
                     Telephone 813-223-5505
                     Fax:  813-257-0572
                     MEdelman@forthepeople.com
                     *Attorney for Plaintiff*